UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No.  12-CR-4704-L |
| Plaintiff, | ) | |
| | ) | ORDER |
| vs. | ) | |
| JOSE ARTEAGA-GONZALEZ, | ) | |
| Defendant. | ) | |

Defendant, Jose Arteaga-Gonzalez, is charged in a one-count indictment with attempted entry after deportation, in violation of 8 U.S.C. § 1326 (a) and (b). [ECF No. 1.]  Defendant was expeditiously removed from the United States on May 26, 2008 after crossing the border on foot at the San Ysidro Port of Entry. On June 10, 2013, Defendant filed a Motion to Dismiss the Indictment on the basis that the underlying expedited removal proceeding violated his due process rights and was fundamentally unfair.  For the following reasons, the Motion is **GRANTED**.

//

1

## I.        **FACTUAL BACKGROUND**

The following factual background is taken from the parties briefs and exhibits.

Defendant was born in Cerro Blanco, Mayarit, Mexico in 1987 and came to the United States when he was approximately three years old. (Mot. Ex. A, H.) Defendant spent his childhood living in San Diego, California, with his father, Miguel Arteaga-Lopez, who is a United States citizen. (*Id*. Ex. F.) Defendant has a brother and sister who were born in the United States. (*Id*. Ex I, J.) School records demonstrate that Defendant did all of his schooling in San Diego, attending Valencia Park Elementary School, O'Farrell Junior High, and Gompers High School. (*Id*. Ex. I.)

On February 4, 2004, while Defendant was still a minor, his father began the process of applying for a visa on Defendant's behalf by filing a Petition for Alien Relative, form I-130. (*Id*. Ex. G.) The petition was approved on February 5, 2005, via an I-797 form, which indicated that the next step was for Defendant to wait for notification from the Department of State National Visa Center which would advise Defendant as to which consulate he needed to visit to complete the processing. (*Id*.) On October 5, 2007, Defendant filed an Application for Immigrant Visa and Alien Registration at the United States Consulate in Ciudad Juarez, Mexico as directed. (Oppo. Ex. 1.) According to the Refusal Worksheet, the application was denied because Defendant had been present in the United States unlawfully from 1992- 2007, he admitted that he had used marijuana in the past and was a current user of crystal methamphetamine. (*Id*. Ex 1, 2.) However, the Refusal Worksheet indicated that his application may be re-evaluated after April 2010. (*Id*. Ex. 2.)

//

On May 26, 2008, Defendant attempted to return to the United States from Mexico via the San Ysidro Port of Entry by foot to see his newborn son. (Mot. 3.) The primary inspection agent referred Defendant to secondary, where Defendant was interviewed and expedited removal proceedings were initiated. (Mot. 4.) Defendant was expeditiously removed to Mexico the same day.

Defendant returned to the United States in September 2008, and on January 8, 2009, was arrested for possession of methamphetamine. (Oppo. Ex. 7, 8.) On September 21, 2009, Defendant was convicted of Possession of Methamphetamine with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1) and Aiding and Abetting in violation of 21 U.S.C. § 2 in the Southern District of California. (*Id*. Ex 9.) In October 2011, Defendant's expedited removal was reinstated. (Oppo. Ex 10.) Defendant was sentenced to 37 months in custody and was physically removed from the United States after he served his sentence on January 13, 2012. (*Id*. Ex 12.)

Early in the morning of August 17, 2012, Border Patrol Agents Emidio Alferez and Sean Lindberg were conducting surveillance at Defendant's last known address prior to his January 13, 2012, removal to Mexico. Agents saw an older man exit the residence, followed by a person who matched Defendant's description. The two men got into a green Dodge minivan, and as the vehicle drove away, the agents pulled the van over and asked the passenger to identify himself. Defendant admitted his identity, and the agents placed Defendant under arrest. Once at the station, the agents confirmed that Defendant was a previously deported alien with no legal right to enter or remain in the United States.

//
//
//

3

## II.  PROCEDURAL BACKGROUND

On November 15, 2012, a federal grand jury in the Southern District of California returned a one-count indictment against Defendant, charging him with Removed Alien Found in the United States, in violation of 8 U.S.C. §§ 1326(a) and (b). [ECF No. 1.] The Indictment further alleged that Defendant was removed from the United States subsequent to September 21, 2009. On November 26, 2012, Defendant was arraigned on the indictment and entered a plea of not guilty. On June 10, 2013, Defendant filed the current Motion to Dismiss the Indictment Based on Invalid Deportation. (Mot. 1 [ECF No. 29.]) The Government filed a Response in Opposition on July 8, 2013, and Defendant filed a Reply in Response to the Opposition on August 30, 2013. [ECF Nos. 36, 40.] The Court held a hearing on the Motion on September 9, 2013.

## III.  DISCUSSION

Defendant contends that (1) his expedited removal pursuant to 8 U.S.C. § 1225 violated his due process rights[1]; and (2) he was prejudiced by the removal. The Government argues that Defendant made a false claim of United States citizenship when he attempted to cross the border, and that the expedited removal did not violate Defendant's due process rights, nor prejudice him.

"The expedited removal statute, § 1225(b)[2], provides that when an alien

---

[1] In his Motion, Defendant also argued that the expedited removal process pursuant to 8 U.S.C. § 1225, is per se unconstitutional because it leaves the determination of an alien's status within the discretion of one Border Patrol agent and relies on the alien's ability to understand the consequences of the decision without any advice or right to counsel. The Court denied this ground during the September 9, 2013, hearing, therefore, the Court focuses its attention solely on Defendant's remaining arguments.

[2] Section 1225 states in pertinent part:
If an immigration officer determines that an alien (other than an alien described in subparagraph (F)) who is arriving in the United States or is described in clause (iii) is inadmissible under **section 1182(a)(6)(C)** or 1182(a)(7) of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title

4

seeks admission to the United States after arriving at a port of entry and . . . misrepresents the alien's identity or citizenship, 'the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum ... or a fear of persecution.'". *Barajas-Alvarado* 655 F.3d 1077, 1081 (9th Cir. 2011). Generally, a defendant in a 8 U.S.C. § 1326 prosecution "has a Fifth Amendment right to collaterally attack a removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004).[3] To succeed in a collateral challenge to a removal order, a defendant must demonstrate: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued improperly deprived him of the opportunity for judicial review, and (3) that the entry of the order was fundamentally unfair." *Id*. An underlying removal order is "fundamentally unfair" when: (1) the defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects. *Id.*; *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000).

---

or a fear of persecution.
8 U.S.C. § 1225(b)(1)(A)(i)(emphasis added).

Section 1182(a)(6)(c) provides that an alien who seeks admission to enter the United States by fraud or willful misrepresentation of a material fact, including a claim that the alien is a United States citizen, is inadmissible. 8 U.S.C. § 1182(a)(6)(C).

[3]However, Section 1225 states that "courts do not have jurisdiction to hear any claim attacking the validity of an order of removal entered under subparagraph (A)(I)" thereby limiting collateral attacks on actions brought under section 1326. 8 U.S.C. 1225(b)(1)(D). The Ninth Circuit in *Barajas-Alvarado*, held that this provision of section 1225 was unconstitutional to the extent it deprives aliens of "some meaningful review" of the expedited removal that serves as a predicate to an action under section 1326, and instead, an underlying expedited removal could be reviewed to determine if it violated the alien's due process rights and the alien suffered prejudice as a result. 655 F.3d at 1087; *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 830 (1987).

Once a due process violation is found, a defendant must show he was prejudiced by the violation. *Id.* A defendant has the burden to prove prejudice. *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc). To carry that burden, he must show he had "plausible grounds for relief from deportation." *United States v. Arce-Hernandez*, 163 F.3d 559, 563 (9th Cir. 1998). "Establishing 'plausibility' requires more than establishing a mere 'possibility'." *United States v. Barajas-Alvarado*, 655 F.3d at 1089. "To show 'plausible grounds' for relief, an alien must show that, in light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [the alien's] own case,' it is plausible, (not merely conceivable) that the IJ would have exercised his discretion in the alien's favor." *Id.* (Citation omitted).

### A. Due Process

*Defendant's Expedited Removal*

Defendant argues that his due process rights were violated in the expedited removal process because: (1) he was denied the opportunity to consult with counsel or the consulate; (2) officials did not follow agency regulations for expedited removals because the agents failed to advise him of the allegations against him and failed to review Defendant's statement before he signed it; (3) the agents failed to advise Defendant that he was eligible for withdrawal of application for admission. (Mot. at 5.)

In response, the Government claims that: (1) there is no right to counsel for non-admitted aliens like Defendant who are not in formal removal proceedings; (2) Defendant has not established that the officers failed to follow agency regulations because, contrary to his assertions, he was served with form I-860 advising him of the charges against him, he signed his sworn statement indicating he had reviewed the statement, and (3) the Ninth Circuit in *U.S. v. Sanchez- Aguilar*, 719 F.3d 1108

(9th Cir. 2013) has held that failure to advise an alien for eligibility for withdrawal of application of admission does not violate due process. (Oppo. at 11, 14, 18.)

### Counsel

There is no right for non-admitted aliens to counsel in expedited removal proceedings, unlike the rights given to an alien presently in the U.S. in a formal removal proceeding. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)("It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders.") 8 C.F.R. § 287.3 states "[e]xcept in the case of an alien subject to the *expedited removal* provisions of section 235(b)(1)(A) of the Act, an alien arrested without warrant and placed in *formal proceedings* under section 238 or 240 of the Act will be advised of the reasons for his or her arrest and the right to be represented at no expense to the Government." (Emphasis added). Because Defendant was not in formal removal proceedings, he did not have a right to counsel, and his due process rights were not violated on this basis.

### Agency Regulations

The Department of Justice has issued regulations governing the procedures for expedited removal. *See* 8 C.F.R. § 1235.3(b)(2)(i).[4] "First, 'the examining

---

[4] "In every case in which the expedited removal provisions will be applied and before removing an alien from the United States pursuant to this section, the examining immigration officer shall create a record of the facts of the case and statements made by the alien. This shall be accomplished by means of a sworn statement using form I-867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1) of the Act. The examining immigration officer shall read, (or have read) to the alien all information contained on Form I-867A. Following questioning and recording of the alien's statement regarding identity, alienage, and inadmissibility, the examining immigration officer shall record the alien's response to the questions contained on Form I-867B, and have the alien read (or have read to him or her) the statement, and the alien shall sign and initial each page of the statement and each correction. The examining immigration officer shall advise the alien of the charges against him or her on Form I-860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement. After obtaining supervisory concurrence . . . the examining immigration official shall serve the alien with Form I-860 and the alien shall sign the reverse of the form acknowledging receipt." 8 U.S.C. § 1235.3.

immigration officer shall create a record of the facts of the case and statements made by the alien ... by means of a sworn statement using Form I–867AB, Record of Sworn Statement in Proceedings under Section 235(b)(1).' The alien must sign and initial each page. Next, the immigration officer 'shall advise the alien of the charges against him or her on Form I–860, Notice and Order of Expedited Removal, and the alien shall be given an opportunity to respond to those charges in the sworn statement.' The immigration officer then serves the alien with Form I–860, and the alien must sign the back of the form to acknowledge receipt.'" *Barajas-Alvarado*, 655 F.3d at 1081 (internal citations omitted).

At the September 9, 2013, hearing, the Government acknowledged that it did not have evidence that Defendant had signed the reverse side of the I-860 form as required by agency regulations. As a result, it appears Defendant was not advised of the charges against him and did not have a chance to refute the statement that he made a false claim to citizenship, therefore, he was not given the due process to which he was entitled. *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950) ("Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned.") The expedited removal process provides very limited oversight, review or safeguards to ensure that an alien understands his rights and the consequences of removal actions because an immigration officer in the field makes the determination of an alien's admissibility and can immediately remove the alien, in essence playing the part of the prosecutor, judge, jury and decision maker. The agency is required only to comply with the regulations under section 1235.3, yet here, the officers did not provide even that limited process to Defendant. As a result, Defendant's expedited removal violated due process.

<u>Failure to Advise of Eligibility for Withdrawal of Application</u>

In *U.S. v. Sanchez-Aguilar* the Ninth Circuit held: "The statute and

8

regulation governing expedited removal proceedings, 8 U.S.C. § 1225(b)(1) and 8 C.F.R. § 235.3, set forth the procedural rights to which such aliens are entitled, but the right to be informed of potentially available avenues of relief from removal is not among them." 719 F.3d 1108, 1112 (9th Cir. 2013). Accordingly, the immigration officer's failure to inform Defendant of his ability to request withdrawal of his application for admission did not violate his due process rights.

### B.    Prejudice

First, Defendant argues that in order to demonstrate that he was prejudiced by the due process violations in the procedures underlying his removal he need only show that he was *eligible* for relief as required under *Proa-Tovar*, 975 F.2d at 592, not that the Attorney General would have *likely granted* relief, as required by the Ninth Circuit in *Uboldo-Figueroa*, 364 F.3d 1042 (9th Cir. 2004). (Mot. 24-27.) Under this analysis, Defendant contends he was eligible for withdrawal of application at the time he was processed via expedited removal, therefore, he was prejudiced by the failure of the agent to advise him of this type of relief. According to Defendant the Court does not need to weigh discretionary factors as part of its prejudice analysis under the *Proa-Tovar* analysis. (*Id*. 24.) In the alternative, Defendant claims he can make a prima facie showing that he had a plausible ground for relief and can also show that he would have been granted that relief, withdrawal of application, if the Court weighs the equities and looks to the INS Inspector's Field Manual guidelines for determining whether an alien is entitled to withdrawal of application. (*Id*. 28.) Further, Defendant claims he did not make a false claim of citizenship, therefore, he was not removable as charged and the removal prejudiced him. (*Id*. at 33.)

The Government argues that Defendant has not established plausible grounds for relief under the INS Field Manual factors. (Oppo. 20-21.) In addition, Defendant was removable as charged, and even if he did not make a false claim to

9

citizenship, he did not have valid documents to enter the United States, and therefore he would have received an expedited removal even if he had not falsely claimed U.S. citizenship under 8 U.S.C § 1225(b)(1); 8 U.S.C. § 1182(a)(6)(c). (*Id*. 29.)

As a preliminary matter, the Court declines to adopt Defendant's argument that the correct standard for determining prejudice is that articulated in *Proa-Tovar*, and instead, the Court must determine whether Defendant had plausible grounds for relief, in this case for withdrawal of his application, by weighing the factors in the Inspector's Field Guide. *See Barajas-Alvarado*, 622 F.3d at 1090. The grant of withdrawal of an application is discretionary, however the Field Guide provides guidance for making this determination. *See In re Gutierrez,* 19 I & N. Dec. 562 (B.I.A. 1988). The Field Manual sets forth six factors an immigration officer should consider in evaluating an alien's request for permission to withdraw: (1) the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health; and (6) other humanitarian or public interest considerations. INS Insp. Field Manual 17.2.

The Court considers each factor in turn.

(1) Seriousness of immigration violation:

It is uncontested that Defendant did not have a criminal or immigration record prior to his attempted entry. Further, it is unclear whether Defendant made a false claim of citizenship. Although the Government argues that Defendant's fraudulent claim to U.S. citizenship constituted obvious, deliberate fraud by an alien which allowed the officer to issue an expedited removal rather than permit withdrawal, it is far from clear that Defendant made this statement. The Government relies on the I-213 form which states that Defendant "verbally

10

declared himself to be a U.S. citizen," however, the I-213 form contains inconsistencies when compared to Defendant's sworn statement, in particular, Defendant asserted in his Statement that he did not produce any documents or say anything to the officer in order to enter the United States. [Govt. Ex.5] In addition, Defendant stated in the Sworn Statement that he was a citizen of Mexico, that he understood he needed a legal document to enter the U.S., and that he knew it was against the law to claim to be a citizen of the U.S. [Govt Ex. 5.] The same officer who signed the I-213 also signed the Sworn Statement, but apparently did not notice the inconsistencies.

The Government also produced a referral slip which purportedly confirms that Defendant was claiming U.S. citizenship with the reference "Claim USC." (Govt Ex.4.) However, the slip is blurred, does not have Defendant's name on it, and states that the alien it references was intending to go to Santa Ana, California. Nowhere else in the record is there any reference to Santa Ana, instead, Defendant repeatedly stated that he was going to San Diego to see his newborn son. Therefore, it is not clear that this slip bolsters the Government's claim. Because there is no unequivocal evidence that confirms the Government's assertion that Defendant committed deliberate fraud about his citizenship when he attempted to enter the country, this factor weighs in favor of Defendant's plausibility for relief.

(2) Previous findings of inadmissibility:

In his Sworn Statement, Defendant claimed he had a petition/visa application pending with the INS. The Government makes much of this point, claiming that despite Defendant's contention that he had no previous findings of inadmissibility he had just been denied a visa on the basis that he had abused drugs and lived in the United States illegally for an extended period of time, directing the Court's attention to the Refusal Worksheet as evidence. However, Defendant claims that the Refusal Worksheet in fact states that the petition may be re-

11

evaluated after April 2010, indicating that it was not a final denial, but that the application was still in process.  Although the Defendant's visa application was denied in 2007, the refusal worksheet, OF-194, dated October 5, 2007, does not indicate that Defendant was permanently foreclosed from obtaining an entry visa.  In light of the fact that Defendant's visa application had been at least provisionally denied, this factor weighs against a finding of plausibility for relief.

(3) Intent to violate the law:

Although the Government contends that Defendant intended to violate immigration law because he went to the border knowing his visa application had been denied and attempted to gain entry to the U.S. by lying about his citizenship, as noted above, there is no definitive proof that he made a false claim of citizenship, nor that he understood the status of his visa application in light of the statement that it could be reviewed again at a later date.  Defendant submitted as evidence the original I-797 dated April 22, 2005,which approved the Form I-130 submitted by Defendant's father on behalf of his son for a visa, which is commonly understood as the first step in the visa application process.  *See Singh v. Clinton*, 618 F.3d 1085, 1087 (9th Cir. 2010); *Yang v. Mukasey*, 510 F.3d 793, 794 (8th Cir. 2007).  Because the Refusal Worksheet states that the petition may be re-evaluated after April 2010, it is not clear that Defendant understood the status of his visa application and that he approached and crossed the border with the intent to violate the law.  This is particularly true for someone not versed in the complexities of immigration law and processes. This factor weighs in Defendant's favor because there is no evidence that Defendant had the intent to violate the law.

(4) Ability to overcome inadmissibility grounds

The Government contends that Defendant could not overcome his inadmissibility because his visa had already been denied and he was not, as he claimed, going through the visa process.  However, there is no proof that

Defendant's visa application had been conclusively denied in light of the fact that the Refusal Worksheet stated the application was still open to review.  If Defendant was still in the process of attempting to secure a visa, it was possible, although perhaps not probable,  that he could still obtain a visa, and thereby overcome any inadmissibility grounds. This factor weighs in favor of plausibility.

(5) Age or poor health

Generally, a defendant's youth, advanced age, or poor health, factor in favor of plausibility for relief. *See Barajas- Alvarado*, 655 F.3d at 1090.  Defendant was 20 years old when he attempted to enter the U.S. and was not in poor health, therefore these factors do not weigh in his favor.

(6) Humanitarian or public interest concerns

The Government argues that humanitarian concerns did not weigh in favor of granting Defendant's request for permission to withdraw.   Defendant contends that his upbringing in the United States from the time he was a small child, his schooling in the U.S., his family being U.S. citizens (other than his mother), and his newborn son weigh in his favor.  It is unclear what constitutes humanitarian concerns for purposes of the Field Manual.  The Ninth Circuit has stated that ties to the United States are not listed as considerations in the Field Manual and therefore they carry little weight. *Barajas-Alvarado*, 655 F.3d at 1091.  The parties have not directed the Court to any further authority defining the circumstances under which a party's circumstances qualify as humanitarian concerns, nor has the Court located any sources defining this category.  Therefore, the circumstances of Defendant's case do not indicate that these factors weigh in his favor.

The Ninth Circuit in numerous unpublished cases, and other district courts, have generally held that when a defendant clearly committed fraud or lied about his citizenship, or if the alien had significant criminal history, defendants cannot show prejudice. *See United States v. Meraz-Olivera,* 472 Fed.Appx. 610 (9th  Cir.

13

2012) (alien had no plausible grounds for relief due to his attempt to enter the U.S. via fraudulent means); *United States v. Barragan-Camarillo,* 460 Fed.Appx. 637 (9th Cir. 2011) (alien did not demonstrate plausibility where he admitted to entering country illegally, was in good health and was thirty years old); *United States v. Quintanilla-Gonzalez*, 450 Fed.Appx. 612 (9th Cir. 2011) (no prejudice where alien was an aggravated felon); *United States v. Reyes-Montiel*, 22 Fed. Appx. 803 (9th Cir. 2001)(no prejudice shown where INS violated its regulations but defendant was not eligible for any relief from removal); *United Stated v. Grande*, WL 3190741 (S.D. Cal. 2013) (finding it was not plausible that Defendant would have been granted request for withdrawal because Field Manual factors did not weigh in his favor, including repeated illegal entries to the U.S. and prior criminal history.)  Considering the factors above, particularly Defendant's lack of criminal or immigration history at the time of removal, and the inconclusive evidence that he deliberately lied about his citizenship and his visa application, it is plausible that Defendant would have been allowed to withdraw his application for admission had he been given the opportunity to do so.  *See Barajas-Alvarado*, 655 F.3d at 1089 ("in light of the factors relevant to the form of relief being sought, and based on the 'unique circumstances of [his] own case,' it was plausible (not merely conceivable) that the [officer] would have exercised his discretion in the alien's favor.")  Although Defendant committed a serious crime subsequent to his removal, at the time of his expedited removal it was plausible that his request for withdrawal of application would have been granted. Therefore, Defendant has sufficiently demonstrated that his removal was fundamentally unfair.

//
//
//

14

### IV.          **EXHAUSTION AND JUDICIAL REVIEW**

Defendant contends that he is excused from demonstrating exhaustion of administrative remedies because he was never informed of any bases of potential relief or mechanism for challenging the finding of his inadmissibility, citing *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (a person eligible for relief from removal who is not advised by an immigration judge of a potential basis of relief is exempted from the exhaustion requirement).  In addition, Defendant argues that he was foreclosed from seeking judicial review in light of the fact that under § 1225(b)(1) an immigration officer determines whether an alien is inadmissible without further hearing or review unless the alien indicates an intention to file for asylum or is fearful of persecution.  8 U.S.C. § 225(b)(1)(I).  According to Defendant, the expedited removal process does not allow for a hearing or other form of review and therefore it necessarily precludes an alien from exhausting administrative remedies or pursuing judicial review, referencing *Barajas-Alvarado,* 655 F.3d at 1082 ("[T]he INA precludes meaningful judicial review of the validity of the proceedings that result in an expedited removal order.")

The Government contends that Defendant cannot establish either a due process violation or prejudice, therefore, he is not exempt from the exhaustion or judicial review requirements of § 1326(d).

If an alien can prove that he suffered prejudice as a result of the deportation, he is exempted from the exhaustion and judicial review prongs of § 1326(d). *Barajas-Alvarado.* at 1049-50.  As indicated above, the Court finds Defendant suffered a due process violation and prejudice as a result, therefore, he is excused from the exhaustion and judicial review requirements.

//

//

15

## V. CONCLUSION AND ORDER

In light of the above, the Court finds that Defendant's due process rights were violated in his 2008 expedited removal due to the immigration agent's failure to follow agency regulations and that he suffered prejudice as a result of the unlawful removal. The Court further finds that Defendant is excused from the exhaustion requirement and that the 2008 removal proceedings improperly deprived him of his opportunity for judicial review. Accordingly, Defendant's Motion to Dismiss the Indictment is **GRANTED** and count one of the Indictment (attempted entry after deportation, 8 U.S.C. § 1326(a) and (b)) is dismissed.

**IT IS SO ORDERED**.

DATED: September 30, 2013

M. James Lorenz
United States District Court Judge